## OLLIE MOFFETT v. THE STATE.

### No. 4093. Decided April 17, 1918.

**Assault to Commit Robbery—Consent—Insufficiency of the Evidence.**

Where, upon trial of assault with intent to commit robbery, the evidence failed to sustain such offense, but rather showed the consent of the party alleged to have been robbed, the conviction could not be sustained. Following Walters v. State, 56 Texas Crim. Rep., 10.

Appeal from the District Court of Tarrant. Tried below before the Hon. George E. Hosey.

Appeal from a conviction of assault with intent to rob; penalty, two years imprisonment in the penitentiary.

The indictment charged that the defendant did then and there unlawfully make an assault in and upon one Jim Scott, and by said assault and by violence and by putting the said Jim Scott in fear of life and bodily injury, did then and there attempt fraudulently to take from the person and possession of the said Jim Scott corporeal personal property of the said Jim Scott, and with the intent then and there on the part of him, the said defendant, to appropriate it to the use and benefit of him, the said defendant, against the peace and dignity of the State.

W. E. Myres, for appellant.—On question of insufficiency of the evidence: Cases cited in opinion.

On question of refusing defendant's special charge: Faulkner v. State,

80 Texas Crim. Rep., 341, 189 S. W. Rep., 1077; Carr v. State, 80 Texas Crim. Rep., 465, 190 S. W. Rep., 727.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of an assault with intent to commit robbery, and allotted two years confinement in the penitentiary.

Briefly, the State's case is made by the witness Scott, with some corroboration, who testified that he was connected with the county attorney's office in some way as a detective; that he had about sixty dollars or more in his pocket and went to a beer saloon for the purpose of ascertaining whether or not the liquor laws were being violated in that place by the sale of whisky, the license issued to the keeper of that establishment being restricted to beer selling. He went in the saloon pretending to be very drunk; went to the bar and called those present to join him in taking a drink. In paying for the drinks he pulled out his roll of money and scattered it around on the counter, pretending to be very drunk. The details with reference to his actions at the time are unnecessary. He reeled in his drunken condition, he said, back to the wall and sat down, and finally got up and went to the counter and called for drinks again, and went through the same performances with reference to the exhibition of his money. Each time after paying for the drinks he gathered up his money and put it in his pocket. Finally he left the saloon, and he says defendant and another man followed him. That he suspected they were going to take his money, or, to use his own language, "rob him." He went to a garage, from which he was ordered by the proprietor because he was drunk. He then went to another, and the proprietor of that establishment ordered him away because there were ladies present and witness was drunk. He laid down on a fender of one of the autos, he says, still feigning to be drunk. From there he managed to get in communication with the county attorney's office, who sent an assistant county attorney and a policeman or detective. He gave them forty dollars of his money, and they marked three bills, a five, two and one dollar bill. These he placed in his pocket. One of those who came from the county attorney's office testified he marked these bills, and Scott put those in his pocket with some silver. It seems in the meantime defendant and companion had gone. Witness followed them to a saloon, found them and they drank again. From there on he gives an account of his wanderings about the streets and under the surveillance of the assistant county attorney and detective, who usually were a block or so away. He anticipated the defendant and the other party would get his money, and in this way maneuvered to be with them so they could do so, or attempt to do so. While walking along he permitted the defendant, he says, to place his hand in his pocket and take some of the money. He says he did not intend for them to get the silver, but intended for them to get the three bills that had been marked. He said:

"I didn't actually give my consent to take the other and it wasn't intended at all for him to get the silver." There was no attempt on his part to then resist taking his money, and under all the circumstances the conclusion seems to be correct that he intended for them to get the money, gave them the opportunity, placed himself in a situation to have his money taken, and made no resistance. He says he was not drunk but playing drunk. That after making up his mind to do this he phoned for the officers to come and witness the performance and arrest the parties. After taking the first money, he says, they walked on some distance when appellant put his hand in his pocket again. He thus describes that transaction: "When he went back in my pocket there the second time I clenches him and he bit me and hit me in the face, and in the wrangle there I threw him on the ground and I was on top of him, and Gibson and Seward came up and threw their guns on him and searched him and took the money he had taken from me; that money was marked. He went in my pocket the second time but didn't go in there after that. The first time he went in my pocket I in a way intended for him to do that and get these bills, but after he had gotten these bills the first time I didn't mean for him to go in there the second time at all and I made resistance when he did. It was during this struggle between us when I made this resistance, that is when Seward and Gibson came up and the defendant was arrested right there at that time." Seward and Gibson are the men spoken of as being the assistant county attorney and detective or policeman. Speaking of this transaction he says: "I thought they were going to rob me; I knew they would rob me the first opportunity and I went along with them. To illustrate to the jury just as I did to you how those men did when they tried to get the silver: This man Moffett was on the left and the other fellow on this side, and I was walking along and they suggested that they take me across the street to the saloon, and he ran his hand down about halfway in this pocket just like that, and I hit him and he bit me, and I stayed with my hold and turned around—near about the time he put his hand in my pocket I hit him, and then after that he bit me in the arm. He hit me with his left hand and I kept my hold the best I could." This is a sufficient statement of the State's case and practically about all there is to it from its evidential phase.

It was contended on the trial and is urged that under the facts this does not constitute an assault to rob. This phase of it was urged in the trial court as well by requested instructions, which were refused by the court, submitting the theory under the evidence that it was not an assault to rob, and could not be more than an assault to commit theft from the person. It clearly is not an assault to commit robbery. The evidence of the witness Scott excludes the idea of robbery, and it may be seriously doubted if it does not exclude the idea of theft from the person. There is too much planning on the part of Scott to have them do what they did do, and non-resistance, and even consent on his part. On the question of want of sufficiency of the evidence to constitute the case one of

assault to rob, see Walters v. State, 56 Texas Crim. Rep., 10, where the facts are much stronger than as depicted in this record. In that case there is no suggestion of consent on the part of the party assaulted, while in the instant case there is a tendency to show that Scott did consent. Under no phase of this evidence was that offense made out. Many cases might be cited in support of the Walters case, supra. Some of them are collated in the opinion in that case.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE, absent.